IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

DANITA THOMAS,            )
     Plaintiff,          )
                   )
      v.               )       Civil No. 3:18-cv-700 (JAG)
                   )
ANDREW M. SAUL,[1]       )
Commissioner of Social Security,  )
     Defendant.        )
_____)

## REPORT AND RECOMMENDATION

On May 19, 2014, Danita Thomas ("Plaintiff") applied for Social Security Disability Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act"), alleging disability from chronic depression, anxiety and panic attacks, pituitary tumor removal, sleep problems, diabetes insipidus, frequent urination problems, adrenal insufficiency, memory problems and vision problems, with an alleged onset date of July 1, 2013. The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration. Thereafter, an Administrative Law Judge ("ALJ") denied Plaintiff's claims in a written decision and the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing that the ALJ erred by: (1) finding at step two that Plaintiff's urinary incontinence,

---

[1] On June 4, 2019, the United States Senate confirmed Andrew M. Saul to a six-year term as the Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Saul should be substituted for former Acting Commissioner Nancy A. Berryhill as the defendant in this matter.

headaches and migraines did not qualify as severe impairments; (2) assigning little weight to the opinion of Plaintiff's treating urologist, Andrew Tracy, M.D., and failing to consider Dr. Tracy's opinion that Plaintiff would require restroom breaks for as long as fifteen minutes and would need to clean up and change her clothes during the workday at least once per week; (3) assigning little weight to the opinion of Plaintiff's treating cardiologist, Cory Trankle, M.D., and failing to consider Dr. Trankle's opinion that Plaintiff's symptoms frequently caused her to lose attention and concentration; and, (4) improperly analyzing Plaintiff's subjective complaints of pain. (Mem. of P. & A. in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.") (ECF No. 15) at 6-22.) This matter now comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties' cross-motions for summary judgment, rendering the matter ripe for review.[2]  For the reasons that follow, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 13) and Motion to Remand (ECF No. 14) be GRANTED, that Defendant's Motion for Summary Judgment (ECF No. 20) be DENIED and that the final decision of the Commissioner be VACATED and REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g).

## I.     PROCEDURAL HISTORY

On May 19, 2014, Plaintiff filed applications for DIB and SSI with an alleged onset date of July 1, 2013.  (R. at 321.)  The SSA denied these claims initially on October 21, 2014, and again upon reconsideration on April 28, 2015.  (R. at 319-20, 392-93.)  At Plaintiff's written

---

[2]      The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C).  In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

request, the ALJ held a hearing on October 26, 2016. (R. at 292-318, 418-19.) Following the

submission of additional evidence by Plaintiff's attorney-representative, (R. at 38-291), on

August 31, 2017, the ALJ issued a written opinion, denying Plaintiff's claims and concluding

that Plaintiff did not qualify as disabled under the Act, (R. at 11-26). On August 13, 2018, the

Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final

decision of the Commissioner subject to review by this Court. (R. at 1-7.)

## II.    STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the

Social Security Administration's disability determination 'when an ALJ has applied correct legal

standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v.

Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d

337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a

preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as

adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig

v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard

'presupposes . . . a zone of choice within which the decision makers can go either way, without

interference by the courts. An administrative decision is not subject to reversal merely because

substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F.

App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir.

1988)).

To determine whether substantial evidence exists, the court must examine the record as a

whole, but may not "undertake to re-weigh conflicting evidence, make credibility

determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472

3

(quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019) (holding that the substantial-evidence inquiry requires case-by-case consideration, with deference to the presiding ALJ's credibility determinations).  In considering the decision of the Commissioner based on the record as a whole, the court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)).  The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477.  If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The Social Security Administration regulations set forth a five-step process that the agency employs to determine whether disability exists.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation).  To summarize, at step one, the ALJ looks at the claimant's current work activity. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements.  §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations.  §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity ("RFC"), accounting for the most that the claimant can do despite her physical and mental limitations. §§ 404.1545(a), 416.945(a).  At step four, the ALJ assesses whether the claimant can perform her past work given her RFC.  §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  Finally, at

4

step five, the ALJ determines whether the claimant can perform any work existing in the national economy.  §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III.    THE ALJ'S DECISION

On October 26, 2016, the ALJ held a hearing during which Plaintiff (represented by counsel) and a vocational expert ("VE") testified.  (R. at 292-318.)  Following the submission of additional medical evidence by Plaintiff's attorney-representative, (R. at 38-291), on August 31, 2017, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act, (R. at 11-26).

The ALJ followed the five-step evaluation process established by the Social Security Act in analyzing Plaintiff's disability claims.  (R. at 13-26.)  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 1, 2013, her alleged onset date.  (R. at 13.)  At step two, the ALJ found that Plaintiff suffered from the following severe impairments: diabetes, benign brain tumor, cervical spine herniation, degenerative disc disease, obesity, heart failure with preserved left ventricular ejection fraction and hypertension.  (R. at 14.)  At step three, the ALJ found that Plaintiff did not have any impairments or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (R. at 16.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff had the residual capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with some additional limitations.  (R. at 17-18.)  Specifically, the ALJ opined that Plaintiff could only occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs, and could never climb ladders, ropes or scaffolds.  (R. at 17.)  The ALJ further found that, although Plaintiff could handle frequent exposure to humidity and pulmonary irritants such as fumes, odors, dust and gas, Plaintiff could handle only occasional exposure to hazardous conditions, including

unprotected heights and moving machinery. (R. at 17-18.) And the ALJ limited Plaintiff to only simple, routine tasks. (R. at 18.)

Based on Plaintiff's RFC, at step four, the ALJ found that Plaintiff could not perform any of her past relevant work. (R. at 24.) At step five, the ALJ determined that, based on Plaintiff's age, education, work experience and RFC, Plaintiff could perform jobs existing in significant numbers in the national economy, including work as a sorter/inspector, packer/packager and small parts assembler. (R. at 24-25.) Accordingly, the ALJ concluded that Plaintiff did not qualify as disabled under the Act. (R. at 25-26.)

IV.   ANALYSIS

Plaintiff, age forty-seven at the time of this Report and Recommendation, previously worked as a cashier, restaurant cook and housekeeper. (R. at 24, 319, 517.) She applied for Social Security benefits, alleging disability from chronic depression, anxiety and panic attacks, pituitary tumor removal, sleep problems, diabetes insipidus, frequent urination problems, adrenal insufficiency, memory problems and vision problems, with an alleged onset date of July 1, 2013. (R. at 321.) Plaintiff's appeal to this Court alleges that the ALJ erred by: (1) finding at step two that Plaintiff's urinary incontinence, headaches and migraines did not qualify as severe impairments; (2) assigning little weight to the opinion of Dr. Tracy and failing to consider Dr. Tracy's opinion that Plaintiff would require restroom breaks for as long as fifteen minutes and would need to clean up and change her clothes during the workday at least once per week; (3) assigning little weight to the opinion of Dr. Trankle and failing to consider Dr. Trankle's opinion that Plaintiff's symptoms frequently caused her to lose attention and concentration; and, (4) improperly analyzing Plaintiff's subjective complaints of pain. (Pl.'s Mem. at 6-22.) For the reasons set forth below, the ALJ erred in her decision.

6

A. **The ALJ Improperly Considered the Severity of Plaintiff's Urinary Incontinence, Headaches and Migraines at Step Two and Failed to Consider Such Impairments in Assessing Plaintiff's RFC, Requiring Remand.**

Plaintiff argues that the ALJ erred at step two by finding that Plaintiff's urinary incontinence, headaches and migraines did not qualify as severe impairments. (Pl.'s Mem. at 11-14, 19-22.) Specifically, Plaintiff contends that the ALJ improperly relied on the fact that Plaintiff's urinary incontinence did not satisfy the criteria of any listings to conclude that her incontinence did not qualify as severe, resulting in the application of a much higher standard than the *de minimis* standard required to prove severity. (Pl.'s Mem. at 11-14.) Plaintiff further argues that the ALJ ignored substantial evidence that her headaches and migraines had more than a minimal effect on her ability to perform work-related functions. (Pl.'s Mem. at 19-22.) Defendant responds that the ALJ properly considered Plaintiff's urinary incontinence, headaches and migraines at step two. (Def.'s Mot. for Summ. J. & Br. in Supp. Thereof ("Def.'s Mem.") (ECF No. 20) at 19-22.)

At step two, the ALJ must consider the claimant's medically determinable impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521, 416.920(a)(4)(ii), 416.921. "The Supreme Court has held that this step of the disability evaluation is a *de minimis* threshold." *Williams v. Astrue*, 2010 WL 395631, at *14 (E.D. Va. Feb. 2, 2010), *report and recommendation adopted*, at *1 (citing *Bowen v. Yuckert*, 482 U.S. 137, 146-47 (1987)).

An ALJ satisfies step two by finding a severe impairment and proceeding through the rest of the sequential analysis. *McCormick v. Soc. Sec. Admin., Comm'r*, 619 F. App'x 855, 858 (11th Cir. 2015); *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) ("[T]he finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is

7

enough to satisfy the requirement of step two.")  Plaintiff has the burden of demonstrating that

she has an "impairment or combination of impairments which significantly limits [her] physical

or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c); *Bowen*, 482

U.S. at 146.  A claimant's impairment(s) "must have lasted or must be expected to last for a

continuous period of at least 12 months" to qualify as severe.  §§ 404.1509, 416.909.

A severe impairment causes more than a minimal effect on one's ability to function.

§§ 404.1520(c), 416.920(c).  Likewise, "[a]n impairment or combination of impairments is not

severe if it does not significantly limit [one's] physical or mental ability to do basic work

activities."  §§ 404.1522(a), 416.922(a).  An ALJ will find a claimant not disabled at step two if

she "do[es] not have a severe medically determinable physical or mental impairment that meets

the duration requirement . . . , or a combination of impairments that is severe and meets the

duration requirement."  §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

### 1. *The ALJ Improperly Assessed the Severity of Plaintiff's Urinary Incontinence at Step Two and Failed to Consider Plaintiff's Incontinence in Formulating Plaintiff's RFC, Requiring Remand.*

In assessing the severity of Plaintiff's impairments, the ALJ found that Plaintiff's urinary

incontinence did not qualify as severe, because it "d[id] not cause a significant limitation in

[Plaintiff's] ability to perform basic work activities." (R. at 14.)  In support of her conclusion,

the ALJ recited Plaintiff's medical history, noting that Plaintiff first complained of frequent

urination in January and February 2014. (R. at 14.)  The ALJ observed that Plaintiff's

incontinence initially improved with medicative treatment, though the ALJ recognized Plaintiff's

continued complaints of frequent urination in June 2014. (R. at 14.)  The ALJ cited to records

from February and November 2015 that recorded incontinence as frequent as nine to ten times

per day. (R. at 14.)  However, the ALJ noted that a percutaneous nerve evaluation in November

2015 "resolved almost all [of Plaintiff's] symptoms." (R. at 14.) And the ALJ cited to records showing that Plaintiff reported a greater than 50 percent improvement in her symptoms following the installment of a InterStim II sacral neuromodulator[3] in December 2015, though the ALJ acknowledged that Plaintiff's symptoms gradually started to return. (R. at 14.) The ALJ noted continued improvement in Plaintiff's symptoms after some adjustments to Plaintiff's neuromodulator, "with improvement still greater than 50 [percent] from prior to [Plaintiff's] surgery." (R. at 14.) The ALJ further noted that Plaintiff felt satisfied with the results of her treatment. (R. at 14.) Finally, the ALJ cited to the opinion of medical expert ("ME"), Gerald Frankel, M.D., that Plaintiff did not meet the listing criteria for incontinence and chronic pelvic pain. (R. at 14.)

Plaintiff challenges the ALJ's reliance on Dr. Frankel's opinion that Plaintiff's incontinence did not satisfy the criteria for incontinence and chronic pelvic pain under the listings. (Pl.'s Mem. at 11-14; R. at 14, 2276.) Specifically, Plaintiff contends that the ALJ could not rely on the fact that Plaintiff's incontinence failed to satisfy the listings to determine whether Plaintiff's incontinence qualified as severe, as the former requires a much higher burden of proof than the latter. (Pl.'s Mem. at 11-12.) Plaintiff adds that substantial evidence supported a finding that her urinary incontinence had more than a minimal effect on her ability to function, which satisfied the *de minimis* standard at step two. (Pl.'s Mem. at 13-14.) Defendant responds that the ALJ properly considered the effect of Plaintiff's incontinence on her work-related functions, finding that Plaintiff's treatment successfully managed her symptoms. (Def.'s Mem.

---

[3]     An InterStim II sacral neuromodulator is an implanted device that stimulates the sacral nerve with the goal of normalizing communication between the bladder and the brain. InterStim II Neurostimulator, Medtronic (July 8, 2019), https://www.medtronic.com/us-en/healthcare-professionals/products/urology/sacral-neuromodulation-systems/interstim-ii.html.

at 20.)  And, in any case, Defendant argues that the ALJ satisfied the requirements at step two by finding that Plaintiff suffered from at least one severe impairment and moving on to consider any limitations resulting from Plaintiff's severe and non-severe impairments in assessing Plaintiff's RFC.  (Def.'s Mem. at 21-22.)

The Court finds the ALJ's explanation regarding the severity of Plaintiff's urinary incontinence legally insufficient, because the ALJ used a much higher standard of proof than the *de minimis* standard required at step two.  Although the ALJ relied on evidence showing a greater than 50 percent improvement in Plaintiff's incontinence following the installation of her neuromodulator, the ALJ failed to explain how Plaintiff's greater than 50 percent improvement resulted in symptoms with only minimal effect on Plaintiff's ability to function.  (R. at 14.)  And the ALJ's reliance on Dr. Frankel's opinion that Plaintiff did not meet the listing criteria for incontinence or chronic pelvic pain failed to establish that Plaintiff's incontinence had only a minimal effect on her functioning.  (R. at 14.)  As Plaintiff correctly notes, the listings require an exacting standard of proof; whereas step two merely requires a *de minimis* showing.  (Pl.'s Mem. at 12 (citing *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008); *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004)).)  *Compare Sullivan v. Zebley*, 493 U.S. 521, 532-33 (1990) (explaining that the listings "were designed to operate as a presumption of disability that makes further inquiry unnecessary" and, consequently, require an exacting standard of proof), *with Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (noting that a claimant's burden at step two serves merely as a "de minimis screening device used to dispose of groundless claims" (quotations and brackets omitted)).  Accordingly, the ALJ's explanation regarding the severity of Plaintiff's urinary incontinence proves legally insufficient.

That said, the Court agrees with Defendant that the erroneous characterization of a claimant's impairment(s) as non-severe at step two does not require remand when the ALJ properly considers the non-severe impairment(s) at subsequent steps in the decisional process. *Woodson v. Berryhill*, 2018 WL 4659449, at *4 (E.D. Va. Aug. 7, 2018), *report and recommendation adopted*, 2018 WL 4658681 (E.D. Va. Sept. 27, 2018); (Def.'s Mem. at 19.) Indeed, an "ALJ must consider the effects of *both the severe and non-severe impairments* at the subsequent steps of the process, including the determination of residual functional capacity." *Fountain v. Astrue*, 2013 WL 145873, at *3 (D. Md. Jan. 11, 2013) (emphasis supplied) (citations omitted). Thus, any defect at step two will not require remand so long as the ALJ properly considers any non-severe impairments at subsequent steps. *Woodson*, 2018 WL 4659449, at *4-5; *Fountain*, 2013 WL 145873, at *3-4.

Here, although the ALJ found in favor of Plaintiff at step two by finding that Plaintiff had seven severe impairments, the ALJ failed to later account for Plaintiff's urinary incontinence — regardless of its severity — in assessing Plaintiff's RFC, requiring remand. Indeed, a review of the ALJ's explanation in support of his RFC findings reveals only two mentions of Plaintiff's incontinence issues: one during the ALJ's description of Plaintiff's subjective complaints, (R. at 18); and, the second when the ALJ briefly mentioned the repositioning of Plaintiff's neuromodulator in June 2017 and Plaintiff's satisfaction with the results of that procedure, (R. at 22). Importantly, when explaining the inconsistencies between Plaintiff's subjective complaints with the evidence of record, the ALJ failed to discuss Plaintiff's urinary incontinence. (R. at 22.) And, as Plaintiff correctly points out, in assessing the opinion of Plaintiff's urologist, Dr. Tracy, the ALJ mentioned only Dr. Tracy's findings regarding Plaintiff's postural limitations, failing to address Dr. Tracy's opinion that Plaintiff's urinary incontinence would require unscheduled

restroom breaks lasting at least fifteen minutes and time for Plaintiff to clean up and change her clothing at least once per week. (Pl.'s Mem. at 6 (citing R. at 1500).)

Although Plaintiff's incontinence improved after installation of her neuromodulator, the Court cannot build the logical bridge between the evidence of record and the presumed conclusion of the ALJ. *See Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (explaining that an ALJ must "'build an accurate and logical bridge from the evidence to his conclusion'" (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)); *see also Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 663 (4th Cir. 2017) (admonishing ALJs to "[s]how [their] work"). Thus, regardless of whether Plaintiff's incontinence qualified as a severe impairment at step two, the Court finds that the true harm occurred when the ALJ failed to explain why Plaintiff's urinary incontinence did or did not translate into RFC limitations. Accordingly, the Court must remand.

> ### 2. *The ALJ Likewise Failed to Adequately Explain the Severity of Plaintiff's Headaches and Migraines at Step Two and Failed to Consider the Limiting Effects, if Any, of Plaintiff's Headaches and Migraines in Assessing Plaintiff's RFC, Requiring Remand.*

In assessing the severity of Plaintiff's headaches and migraines at step two, the ALJ recounted Plaintiff's history of headaches beginning in October 2013. (R. at 14-15.) The ALJ observed that Plaintiff continued to complain of headaches after starting medicative treatment in June 2014, but found that Plaintiff had no indication of ongoing headaches or migraines after January 2015. (R. at 14-15.) Plaintiff argues that the ALJ ignored records from after January 2015 showing continued complaints of headaches and migraines, depriving the ALJ's step-two finding of substantial support. (Pl.'s Mem. at 19-22.) Defendant responds that, although Plaintiff received treatment for headaches and migraines after January 2015, Plaintiff failed to establish that her headaches, with appropriate treatment, would have more than a minimal effect

on her ability to function.  (Def.'s Mem. at 21.)  Defendant adds that any error at step two proves

inconsequential, because the ALJ considered Plaintiff's headaches and migraines at subsequent

steps.  (Def.'s Mem. at 22.)

The Court finds the ALJ's explanation regarding the severity of Plaintiff's headaches and

migraines legally insufficient.  For one, the ALJ simply recited a portion of Plaintiff's medical

history with headaches and migraines without fully explaining how that medical history

demonstrated that Plaintiff's headaches and migraines had only a minimal effect on her ability to

function.  (R. at 14-15.)  Moreover, as Plaintiff correctly notes and Defendant concedes, the ALJ

ignored evidence of Plaintiff's continued headaches after January 2015.  (Pl.'s Mem. at 19-22;

Def.'s Mem. at 21.)  Thus, the ALJ's explanation failed to account for a significant portion of

Plaintiff's medical records, and the Court can only guess how the ALJ viewed those records.

That said, because the ALJ found at least one severe impairment at step two, so long as

the ALJ considered Plaintiff's headaches and migraines — regardless of severity — at later

steps, the ALJ did not err.  *Woodson*, 2018 WL 4659449, at *4.  However, as with Plaintiff's

urinary incontinence, the ALJ here failed to adequately consider Plaintiff's headaches and

migraines in formulating her RFC, requiring remand.  Indeed, in assessing Plaintiff's RFC, the

ALJ acknowledged medical evidence describing Plaintiff's headaches and migraines, (*see* R. at

19 (describing Plaintiff's complaints of headaches in August and October 2013), 20 (describing

December 2013 report that Plaintiff's headaches had eased somewhat and January 2014 report

that Plaintiff's headaches had considerably improved following removal of her benign brain

tumor)), but the ALJ failed to discuss whether Plaintiff's headaches and migraines resulted in

functional limitations.  Although the ALJ explained that the evidence of record showed no

recurrence of Plaintiff's benign pituitary tumor following surgical and medicative treatment, (R.

13

at 22), the ALJ failed to explain whether and how the evidence of record supported the ALJ's implicit conclusion that the treatment of Plaintiff's tumor cured her headaches, especially considering that the medical records showed Plaintiff's continued troubles with headaches following removal of her brain tumor, (R. at 1505, 1872, 1902, 2016, 2022, 2027-29, 2043, 2065, 2083, 2112, 2133, 2141, 2143, 2269).  Regardless of whether Plaintiff's headaches and migraines qualified as severe at step two, without proper consideration of Plaintiff's headaches and migraines at subsequent steps, the Court must remand.

> **B.**     **The ALJ Provided an Insufficient Explanation in Affording Dr. Tracy's Opinion Little Weight.**

Next, Plaintiff argues that the ALJ erred as a matter of law by using only part of Dr. Tracy's opinion to discredit the entirety of Dr. Tracy's findings.  (Pl.'s Mem. at 6-7.) Specifically, Plaintiff contends that the ALJ addressed only the portion of Dr. Tracy's opinion concerning Plaintiff's capacity to sit, ignoring Dr. Tracy's opinion as to Plaintiff's need for restroom breaks and to clean up and change her clothes during workhours.  (Pl.'s Mem. at 6.) Defendant responds that neither Fourth Circuit caselaw nor the regulations require ALJs to address every checkmark in a treating physician opinion as a distinct medical opinion, "which must be addressed or refuted by persuasive contradictory evidence."  (Def.'s Mem. at 15.) Defendant adds that the ALJ considered Plaintiff's urinary incontinence elsewhere in her opinion, including medical evidence from after Dr. Tracy's opinion and the installation of Plaintiff's neuromodulator that showed improvement in Plaintiff's condition.  (Def.'s Mem. at 17-18 (citing R. at 14, 1702-04, 1851, 2047, 2050, 2272-73).)

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments, that would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ

must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluations that have been ordered. 20 C.F.R. §§ 404.1512, 404.1527, 416.912, 416.927. When the record contains a number of different medical opinions, including those from Plaintiff's treating sources, consultative examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. §§ 404.1527(c), 416.927(c). If, however, the medical opinions are inconsistent internally with each other or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. §§ 404.1527(c)(2)-(6), (d), 416.927(c)(2)-(6), (d).

Under the regulations, only an "acceptable medical source" may be considered a treating source that offers an opinion entitled to controlling weight. SSR 06-3p.[4] Acceptable medical sources include licensed physicians, licensed or certified psychologists and certain other specialists, depending on the claimed disability. §§ 404.1513(a), 404.1527(a), 416.913(a), 416.927(a). The regulations also provide for the consideration of opinions from "other sources," including nurse-practitioners, physician's assistants or therapists. SSR 06-03p; §§ 404.1527(f), 416.927(f).[5] Under the applicable regulations and caselaw, a treating source's opinion must be

---

[4]     Effective March 27, 2017, the SSA rescinded SSR 96-2p and 06-3p, instead incorporating some of the Rulings' policies into 20 C.F.R. §§ 404.1527(f), 416.927(f). 82 Fed. Reg. 5844-01, at 5844-45, 5854-55 (Jan. 18, 2017). Plaintiff filed her claims on May 19, 2014, before this regulation took effect. (R. at 321.) The Agency does not have the power to engage in retroactive rulemaking. *Compare Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) (requiring Congress to expressly convey the power to promulgate retroactive rules due to its disfavored place in the law), *with* 42 U.S.C. § 405(a) (granting the Agency the general power to make rules, but not granting retroactive rulemaking power). Because the regulation does not have retroactive effect, SSR 06-03p applies to Plaintiff's claims.

[5]     The regulations detail that "other sources" include medical sources that are not considered "acceptable medical sources" under 20 C.F.R. §§ 404.1527(f) and 416.927(f). The given examples are a non-exhaustive list. SSR 06-03p.

given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Lewis v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017); *Craig*, 76 F.3d at 590; §§ 404.1527(c)(2), 416.927(c)(2); SSR 96-2p.  Further, the regulations do not require that the ALJ accept opinions from a treating source in every situation, *e.g.*, when the source opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the treating source's opinion is inconsistent with other evidence or when it is not otherwise well-supported.  §§ 404.1527(c)(3)-(4), (d), 416.927(c)(3)-(4), (d).

Courts generally should not disturb an ALJ's decision as to the weight afforded a medical opinion absent some indication that the ALJ "dredged up 'specious inconsistences.'" *Dunn v. Colvin*, 607 F. App'x 264, 267 (4th Cir. 2015) (citing *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)).  Indeed, an ALJ's decision regarding weight afforded a medical opinion should be left untouched unless the ALJ failed to give a sufficient reason for the weight afforded.  *Id.*

The ALJ must consider the following when evaluating a treating source's opinion:  (1) the length of the treating source relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability based upon the medical record; (4) consistency between the opinion and the medical record; (5) any specialization on the part of the treating source; and, (6) any other relevant factors.  §§ 404.1527(c), 416.927(c).  However, those same regulations specifically vest the ALJ — not the treating source — with the authority to determine whether a claimant is disabled as that term is defined under the Act. §§ 404.1527(d)(1), 416.927(d)(1).  Although the regulations explicitly apply these enumerated factors only to treating sources, those same factors may be applied in evaluating opinion evidence from "other sources."  SSR 06-03p.

16

On November 3, 2015, Dr. Tracy completed a Urinary Residual Functional Capacity Questionnaire for Plaintiff. (R. at 1497-1501.) On the Questionnaire, Dr. Tracy diagnosed Plaintiff with difficulty urinating, incontinence, dysuria[6] and pelvic pain. (R. at 1497.) When asked to describe Plaintiff's treatment, including any side effects from medications, Dr. Tracy wrote "NA." (R. at 1497.) Dr. Tracy marked that Plaintiff's impairments would last longer than twelve months, and Dr. Tracy denied that Plaintiff malingered or that emotional factors contributed to the severity of Plaintiff's symptoms and limitations. (R. at 1497-98.) Dr. Tracy opined that Plaintiff's symptoms would frequently interfere with her ability to maintain attention and concentration. (R. at 1498.) Ultimately, Dr. Tracy estimated that Plaintiff would have episodes of urinary incontinence approximately nine or ten times per day, though he could not say what factors worsened Plaintiff's condition. (R. at 1498.)

In describing Plaintiff's functional capacity, Dr. Tracy marked that Plaintiff could not perform "even 'low stress' jobs," providing no explanation why. (R. at 1499.) Dr. Tracy opined that Plaintiff could walk up to four city blocks without rest or severe pain and sit or stand for up to thirty minutes at one time. (R. at 1499.) In total, Dr. Tracy estimated that, with normal breaks, Plaintiff could sit and stand/walk for less than two hours during an eight-hour workday. (R. at 1499.) And Dr. Tracy affirmed that Plaintiff required a job that permitted her to shift positions at will. (R. at 1500.) As for Plaintiff's urinary impairments, Dr. Tracy marked that Plaintiff would need ready access to a restroom and fifteen-minute, unscheduled restroom breaks throughout the workday. (R. at 1500.) Dr. Tracy further opined that Plaintiff would need to clean up and change her clothes following urinary incontinence approximately one or two times

---

[6]     Dysuria describes either painful urination or difficulty urinating more generally. *Dysuria*, Dorland's Illustrated Medical Dictionary (32d ed. 2012).

per week. (R. at 1500.)  Dr. Tracy noted that Plaintiff could never lift any amount of weight, twist, stoop, crouch or climb ladders and stairs.  (R. at 1500-01.)  Finally, Dr. Tracy estimated that Plaintiff would miss work an average of more than four days each month because of her impairments and treatment.  (R. at 1501.)

The ALJ afforded Dr. Tracy's opinion little weight, explaining that the medical evidence "[did] not support limitations to sitting less than 2 hours in a workday or never lifting or carrying any weight or perform[ing] any postural activities." (R. at 23.)  The ALJ explained that Plaintiff had unremarkable objective medical findings, including normal strength and sensation, throughout the record.  (R. at 23.)  The ALJ did not specifically address Dr. Tracy's opinion that Plaintiff would require fifteen-minute, unscheduled restroom breaks and need to clean herself and change clothes at least once per week.

The Court finds the ALJ's explanation legally insufficient, because the ALJ failed to explain why Dr. Tracy's opinion as to Plaintiff's need for restroom breaks or his opinion as a whole deserved only little weight, focusing only on Dr. Tracy's opinion as to Plaintiff's ability to sit and other postural functions.  (R. at 23.)  The regulations define "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1).  By this definition, Dr. Tracy's statements that Plaintiff would require fifteen-minute, unscheduled restroom breaks and need time to clean up and change her clothes at least once per week constituted medical opinions, even though they appeared within one opinion document. *See Morgan v. Barnhart*, 142 F. App'x 716, 722-23 (4th Cir. 2005) (considering separate statements by a treating physician as

18

separate opinions for the purposes of the court's analysis). Thus, without an explanation as to why Dr. Tracy's opinions regarding Plaintiff's incontinence-related limitations deserved only little weight, or without an explanation as to why Dr. Tracy's opinion as a whole deserved only little weight, the Court cannot determine why the ALJ ignored the additional and relevant functional limitations in Dr. Tracy's opinion.

Moreover, as mentioned, the ALJ's failure to address the incontinence-related limitations endorsed by Dr. Tracy proves harmful, because the lack of explanation deprives this Court of its ability to determine whether substantial evidence supports the ALJ's implicit conclusion that Plaintiff's urinary incontinence did not result in additional RFC limitations. *See Monroe*, 826 F.3d at 189 (explaining that an ALJ must "'build an accurate and logical bridge from the evidence to his conclusion'" (quoting *Clifford*, 227 F.3d at 872)); *see also Mascio*, 780 F.3d at 636 (agreeing with the Second Circuit that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review" (quotations and citations omitted)). Although Defendant supplies the Court with examples of inconsistencies between the record and Dr. Tracy's opinion, (*see* Def.'s Mem. at 17-18 (explaining that medical records produced after Dr. Tracy's opinion showed improvement in Plaintiff's urinary incontinence)), the Court may not provide the explanation for the ALJ — the ALJ must "show [her] work," *Patterson*, 846 F.3d at 663.

Of course, an ALJ's duty to properly explain the weight afforded to the medical opinions of record does not require specific consideration of every limitation endorsed by a medical source. Indeed, the Fourth Circuit has refused to adopt an explicit rule that ALJs must perform a function-by-function analysis in formulating the RFC. *See Mascio*, 780 F.3d at 636 (explaining

19

that such a rule would "prove futile where the ALJ does not discuss functions that are 'irrelevant or uncontested'" (citations omitted)).  However, the Fourth Circuit has required ALJs to consider functions — such as those related to Plaintiff's urinary incontinence — that the evidence of record renders relevant. *Id.*  Because the evidence of record rendered Plaintiff's incontinence-related limitations relevant to her RFC, without a sufficient explanation of those possible limitations as described by Dr. Tracy, the Court must remand.

### C.  The ALJ Provided an Insufficient Explanation for the Weight Afforded to Dr. Trankle's Opinion.

Plaintiff likewise challenges the ALJ's assignment of little weight to the opinion of her treating cardiologist, Dr. Trankle. (Pl.'s Mem. at 7-11.)  As with Plaintiff's challenge to the ALJ's treatment of Dr. Tracy's opinion, Plaintiff contends that the ALJ improperly focused on only part of Dr. Trankle's opinion — namely, his opinion regarding Plaintiff's ability to sit — to justify the assignment of little weight to the opinion as a whole, ignoring Dr. Trankle's limitations on Plaintiff's ability to concentrate. (Pl.'s Mem. at 7-8.)  Plaintiff adds that the evidence on which the ALJ relied in assigning little weight to Dr. Trankle's opinion proves unpersuasive for various reasons. (Pl.'s Mem. at 9-11.)  Defendant responds that the ALJ appropriately considered Dr. Trankle's opinion, because no regulation or caselaw requires ALJs to consider every limitation endorsed by a medical source. (Def.'s Mem. at 18.)  Defendant further contends that the aspects of Dr. Trankle's opinion not addressed by the ALJ proved "conclusory and unexplained," adding that nothing in the records supported a finding that Plaintiff suffered from limitations in her concentration. (Def.'s Mem. at 18.)

Dr. Trankle completed a Cardiac Residual Functional Capacity Questionnaire for Plaintiff on October 20, 2015. (R. at 1492-96.)  Dr. Trankle stated that he had treated Plaintiff for three months at the time of the Questionnaire. (R. at 1492.)  Based on that treatment, Dr.

Trankle diagnosed Plaintiff with New York Heart Association ("NYHA") class III diastolic heart failure,[7] noting that Plaintiff had multiple hospital admissions for heart failure exacerbation. (R. at 1492.) Dr. Trankle listed several clinical findings to support this diagnosis, including hyperglycemia, high cholesterol, an ejection fraction of 35 percent,[8] decreased exercise capacity and obstructive sleep apnea requiring a continuous positive airway pressure ("CPAP") machine. (R. at 1492.) And Dr. Trankle marked that Plaintiff exhibited symptoms of chest pain, shortness of breath, fatigue, weakness, edema and nausea, adding that Plaintiff also suffered from nocturnal dyspnea,[9] anxiety, orthopnea[10] and vomiting. (R. at 1492.) In describing Plaintiff's chest pain, Dr. Trankle opined that Plaintiff experienced pain with exertion and when laying down, with the least pain while sitting. (R. at 1492.) Dr. Trankle denied that Plaintiff malingered. (R. at 1492.)

---

[7]    Under the NYHA classification guidelines, patients with class III diastolic heart failure experience marked limitations in their ability to perform physical activity, though they remain comfortable at rest. Classes of Heart Failure, Am. Heart Ass'n (July 3, 2019), https://www.heart.org/en/health-topics/heart-failure/what-is-heart-failure/classes-of-heart-failure. Less than ordinary activity causes such patients to experience fatigue, palpitation or dyspnea. *Id.*

[8]    An ejection faction describes "the proportion of the volume of blood in the ventricles at the end of diastole that is ejected during systole; it is the stroke volume divided by the end diastolic volume, often expressed as a percentage. It is normally 65 [plus or minus] 8; lower values indicate ventricular dysfunction." *Ejection Fraction*, Dorland's Illustrated Medical Dictionary (32d ed. 2012). An ejection fraction below 40 percent may evidence heart failure. Ejection Fraction Heart Failure Measurement, Am. Heart Ass'n (July 3, 2019), https://www.heart.org/en/health-topics/heart-failure/diagnosing-heart-failure/ejection-fraction-heart-failure-measurement.

[9]    Nocturnal dyspnea denotes shortness of breath that proves minimal in the morning but worsens as the day progresses, becoming severe at night. *Nocturnal Dyspnea*, Dorland's Illustrated Medical Dictionary (32d ed. 2012).

[10]   Patients with orthopnea experience relief in their shortness of breath upon assuming an upright position. *Orthopnea*, Dorland's Illustrated Medical Dictionary (32d ed. 2012).

In assessing Plaintiff's functional capacity, Dr. Trankle confirmed that Plaintiff experienced marked limitations in physical activity. (R. at 1492.) Dr. Trankle noted that stress did not constitute a factor in Plaintiff's symptoms, but Dr. Trankle nonetheless marked that Plaintiff could not perform even low stress jobs. (R. at 1493.) After averring that Plaintiff's anxiety and depression contributed to the severity of her symptoms and functional limitations, Dr. Trankle affirmed that Plaintiff's cardiac symptoms, including her psychological preoccupation with those symptoms, would frequently (i.e., between 34 and 66 percent of an eight-hour workday) interfere with her ability to maintain the attention and concentration necessary to perform even simple work tasks. (R. at 1493.)

Addressing Plaintiff's postural and exertional abilities, Dr. Trankle estimated that Plaintiff could walk less than a city block and sit and stand/walk for less than two hours in an eight-hour workday, though Dr. Trankle denied that Plaintiff required a job that permitted her to shift positions at will. (R. at 1494.) Dr. Trankle further denied that Plaintiff would require unscheduled breaks in an eight-hour workday, explaining that Plaintiff would be unable to work at all due to her heart conditions. (R. at 1494.) Dr. Trankle endorsed that Plaintiff would require at least 30 degrees of leg elevation for approximately 60 percent of the workday if required to sit for prolonged periods. (R. at 1494.) And Dr. Trankle added that Plaintiff could sit for no longer than thirty minutes and stand for no longer than twenty minutes at one time. (R. at 1496.) Dr. Trankle marked that Plaintiff could rarely lift up to ten pounds and could never lift more than ten pounds, adding that Plaintiff could never twist, stoop, crouch/squat or climb ladders and stairs. (R. at 1495-96.) As for Plaintiff's ability to handle environmental irritants, Dr. Trankle marked that Plaintiff had to avoid all exposure to extreme temperatures, humidity, wetness, smoke, perfumes, soldering fluxes, solvents, cleaners, fumes, odors, gases, dust and chemicals. (R. at

1495.)  Ultimately, Dr. Trankle estimated that Plaintiff would miss more than four days per

month due to her impairments and corresponding treatment.  (R. at 1496.)

       The ALJ afforded Dr. Trankle's opinion little weight, explaining that "[t]he medical

evidence does not support such significant limitations to sitting."  (R. at 23.)  The ALJ cited to

Plaintiff's "generally unremarkable objective findings, including strength and sensation," as

evidence that contradicted the sitting limitations endorsed by Dr. Trankle.  (R. at 23.)  And the

ALJ explained that "[t]he record also does not support that the claimant will be absent from work

more than four days a month."  (R. at 23.)

       The Court finds the ALJ's explanation legally insufficient.  For one, the ALJ failed to

explain which parts of the record proved inconsistent with Dr. Trankle's opinion that Plaintiff

would miss more than four days of work each month.  Indeed, this Court has previously found an

ALJ's explanation insufficient when, as here, the ALJ refers only to general consistencies or

inconsistencies between the record and a medical opinion.  *See Orpiano v. Berryhill*, 2018 WL

43266858, at *6 (E.D. Va. Aug. 24, 2018) (recommending remand, because the ALJ explained

only that he "considered [the state agency] opinions and gave them significant weight" without

citation to specific parts of the record (quotations and citations omitted)), *report and

recommendation adopted*, 2018 WL 4326808 (E.D. Va. Sept. 10, 2018); *Wilson v. Astrue*, 2012

WL 4717873, at *13-14 (E.D. Va. Oct. 1, 2012) (finding the ALJ's explanation that state agency

opinions "[proved] consistent with the record as a whole" inadequate (quotations and citations

omitted)); *see also Bryant v. Colvin*, 2013 WL 3455736, at *7 (E.D.N.C. July 9, 2013) (finding

ALJ's explanation that state agency opinion proved "consistent with the medical evidence of

record" inadequate (quotations and citations omitted)).  Although the record may have indeed

proved inconsistent with Dr. Trankle's opinion regarding the number of days Plaintiff likely

23

would miss work, without reference to even a category of evidence, the Court "[is] left to guess about how the ALJ arrived at [her] conclusions," requiring remand. *Mascio*, 780 F.3d at 638; *see also Sharp v. Colvin*, 660 F. App'x 251, 257 (4th Cir. 2016) (affirming ALJ's explanation regarding medical opinion, because the ALJ at least "identified a particular category of evidence").

Moreover, as with the ALJ's treatment of Dr. Tracy's opinion, the ALJ's explanation here proves legally deficient, because the ALJ focused on only two functional limitations to justify the assignment of little weight to the remaining limitations endorsed by Dr. Trankle. As mentioned, although an ALJ need not perform a detailed, function-by-function analysis of even those functions unaffected by Plaintiff's medically determinable impairments, an ALJ errs when she discredits only one type of functional limitation without consideration of other relevant limitations in a medical opinion, or without at least discrediting the opinion as a whole. *Mascio*, 780 F.3d at 636. Because the ALJ failed to address Dr. Trankle's opinions regarding the effects of Plaintiff's cardiac issues on her ability to perform work-related functions, the Court cannot meaningfully review the ALJ's assignment of weight to Dr. Trankle's opinion. Thus, the Court must remand.

**D.     The ALJ Improperly Analyzed Plaintiff's Subjective Complaints of Pain.**

Lastly, Plaintiff argues that the ALJ erred in analyzing her subjective complaints of pain in two respects. (Pl.'s Mem. at 14, 16.) First, Plaintiff contends that the ALJ erred at step one of the two-step *Craig* analysis by stating that Plaintiff's "medically determinable impairments could reasonably be expected to produce *some* of the above alleged symptoms." (R. at 18 (emphasis added); Pl.'s Mem. at 14-16.) Plaintiff argues that *Craig* requires ALJs to find either that Plaintiff's medically determinable impairments could reasonably be expected to produce all or

24

none of Plaintiff's alleged pain — not some.  (Pl.'s Mem. at 14-16 (citing *Craig*, 76 F.3d at 595).)  Next, Plaintiff argues that the ALJ erred at step two of the *Craig* analysis by relying solely on the fact that the objective medical evidence did not substantiate Plaintiff's subjective complaints of pain.  (Pl.'s Mem. at 16-19.)  Defendant responds that the ALJ properly followed the *Craig* analysis and that substantial evidence supports the ALJ's decision.  (Def.'s Mem. at 23-26.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC.  20 C.F.R. §§ 404.1520(e)-(f), 404.1545(a)(1).  The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's consistent complaints.  As of March 28, 2016, the ALJ must follow a revised two-step analysis in reviewing a claimant's subjective complaints.  20 C.F.R. §§ 404.1529(a); SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016); *see also* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) (correcting terminology relating to applicable date); SSR 16-3p, 2016 WL 1237954 (Mar. 24, 2016) (correcting effective date to March 28, 2016).  The first step requires the ALJ to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms.  SSR 16-3p, 2016 WL 1119029, at *3.  If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's "symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work related activities."  *Id.* at *4.  The ALJ's step-two evaluation must first consider the consistency between a claimant's statements and the objective medical evidence.  *Id.* at *5.  Unless the ALJ can determine that a claimant qualifies as disabled

25

based solely on objective medical evidence, the ALJ must also consider other sources of evidence to determine consistency, including "statements from the [claimant], medical sources, and other sources that might have information about the [claimant's] symptoms." *Id.* at *5-7. Based on the degree of consistency between a claimant's statements and the evidence of record, the ALJ should find either a higher or lower likelihood that the claimant can perform work-related activities. *Id.* at *8.

Furthermore, it is well established that Plaintiff's subjective allegations of pain are not, alone, conclusive evidence that Plaintiff qualifies as disabled. *Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 591.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce some of her alleged symptoms, but that Plaintiff's statements regarding the intensity, persistence and limiting effects of those symptoms proved inconsistent with the evidence of record. (R. at 18-19.) Accordingly, the ALJ found that Plaintiff's alleged symptoms affected her ability to work "only to the extent they [could] reasonably be accepted as consistent with the objective medical and other evidence." (R. at 19.)

### 1.   At **Craig** *Step One, The ALJ Failed to Explain Which of Plaintiff's Symptoms Her Medically Determinable Impairments Could Not Reasonably Be Expected to Produce.*

The Court finds that the ALJ erred at step one of the *Craig* analysis by stating that Plaintiff's medically determinable impairments could reasonably be expected to produce only some of her alleged symptoms but failing to explain which symptoms Plaintiff's medically

26

determinable impairments could not reasonably produce.  Such an error proves distinct from the

one argued by Plaintiff.  The Court disagrees with Plaintiff that the ALJ's decision to credit only

some of Plaintiff's alleged symptoms equates to a rejection of Plaintiff's alleged symptoms of

pain. (Pl.'s Mem. at 14-16.)  Plaintiff had several alleged symptoms in addition to pain, which

the ALJ listed before conducting her *Craig* analysis. (*See* R. at 18 (detailing that, in addition to

pain, Plaintiff complained of dizziness, falls, urinary problems, shortness of breath, mobility

issues, drowsiness, nausea and postural limitations).)  Thus, in finding that Plaintiff's medically

determinable impairments could reasonably be expected to produce only some of Plaintiff's

"above alleged symptoms," the ALJ did not reject the degree of pain about which Plaintiff

complained; rather, the ALJ merely rejected some of the symptoms alleged by Plaintiff while

accepting others. (R. at 18.)  Such an explanation agrees with the Fourth Circuit's holding in

*Craig*, which requires ALJs to accept allegations of pain or other symptoms not simply by kind

or degree, but as actually alleged by a claimant. *Craig*, 76 F.3d at 594 ("[T]here *must* be shown

a medically determinable impairment which could reasonably be expected to cause not just pain[,

by way of example,] or some pain, or pain of some kind or severity, but *the pain the claimant*

*alleges she suffers*." (emphasis supplied)).  Indeed, this Court has found that an ALJ satisfies step

one of the *Craig* analysis using nearly identical language to the language at issue here.  *See*

*Powell v. Colvin*, 2016 WL 6562071, at *6 (E.D. Va. Oct. 14, 2016) (finding that use of the word

"some" had no harmful effect on the plaintiff, because the ALJ nonetheless found in favor of the

plaintiff at step one), *report and recommendation adopted*, 2016 WL 6542849 (E.D. Va. Nov. 3,

2016); *see also Little v. Comm'r of Soc. Sec.*, 2010 WL 5476742, at *9 (E.D. Va. Oct. 22, 2010)

(finding that the ALJ satisfied step one of the *Craig* analysis using nearly identical language to

the language at issue here); *Huffman v. Astrue*, 2009 WL 3247143, at *6 (S.D. W. Va. Sept. 30,

27

2009) (same).  Accordingly, the Court finds no error in the language used by the ALJ at step one of her *Craig* analysis.

The ALJ erred, however, in failing to later explain which symptoms Plaintiff's medically determinable impairments could not reasonably be expected to produce.  Specifically, in assessing Plaintiff's RFC, the ALJ failed to address the limiting effects, if any, of Plaintiff's medically determinable urinary incontinence, headaches and migraines.  Presumably, by failing to discuss Plaintiff's complaints of urinary incontinence, headaches and migraines, the ALJ intended to discredit such symptoms as not reasonably produced by Plaintiff's medically determinable impairments, but the ALJ, not this Court, must provide an explanation for her conclusions.  *Patterson*, 846 F.3d at 663.  Without an explanation of which symptoms Plaintiff's medically determinable impairments could not reasonably be expected to produce, the ALJ erred at step one of the *Craig* analysis, requiring remand.

### 2.    The ALJ Erred at Step Two of the Craig Analysis by Considering Only the Objective Medical Evidence.

The Court agrees with Plaintiff that the ALJ committed legal error at step two of the *Craig* analysis by considering only the consistency between Plaintiff's subjective complaints and the objective medical evidence.  (Pl.'s Mem. at 16-19.)  As explained, unless an ALJ finds that the objective medical evidence supports a finding of disability, the ALJ must consider the consistency between a claimant's subjective complaints and other evidence in the record, including "statements from the [claimant], medical sources, and other sources that might have information about the [claimant's] symptoms."  SSR 16-3p, 2016 WL 1119029, at *5; *see also Craig*, 76 F.3d at 595 ("[C]laims of disabling pain may not be rejected '*solely* because the available objective evidence does not substantiate [the claimant's] statements' as to the severity

and persistence of her pain." (emphasis supplied) (quoting 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (1996))).

Here, the ALJ found that Plaintiff's subjective complaints affected her "ability to work only to the extent they [could] reasonably be accepted as consistent with the objective medical and other evidence." (R. at 19.)  However, in her explanation of the evidence, the ALJ focused only on Plaintiff's objective medical records.  (R. at 19-22.)  Summarizing the inconsistencies between the evidence of record and Plaintiff's subjective complaints, the ALJ stated that Plaintiff's "treatment records [did] not support [Plaintiff's] allegations regarding the severity of her limitations," and then the ALJ went on to discuss Plaintiff's physical examination results, imaging findings, normal ejection fraction and other objective data from the record.  (R. at 22.) The ALJ failed to identify "what statements by [Plaintiff] undercut her subjective evidence of pain intensity as limiting her functional capacity."  *See Lewis*, 856 F.3d at 866 (requiring remand, because ALJ relied solely on objective medical evidence in discounting plaintiff's testimony regarding the limiting effects of his pain).  Such a one-dimensional review of the record runs afoul of the regulations and caselaw.  Because the ALJ found that Plaintiff's medically determinable impairments reasonably could be expected to cause some of her alleged symptoms, Plaintiff "was entitled to rely exclusively on subjective evidence" to prove that the continuous nature and severity of her pain prevented her from completing a full workday.  *Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006); SSR 16-3p; (R. at 9).  By apparently relying solely on objective medical evidence in finding Plaintiff's statements regarding the intensity, persistence and limiting effects of her symptoms not entirely credible, the ALJ held Plaintiff to an improper standard and increased her burden of proof.  *Lewis*, 856 F.3d at 866

29

Moreover, the ALJ further erred by failing to explain why she discredited Plaintiff's complaints of urinary incontinence, headaches and migraines. *See Kemp v. Astrue*, 2009 WL 580336, at *6 (D.S.C. Mar. 5, 2009) (finding that the ALJ erred by failing to discuss why he found the plaintiff's statements regarding his memory, vision and vertigo problems "not entirely credible" (international quotations and citations omitted)).  Thus, the Court must remand.

## V.      CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 13) and Motion to Remand (ECF No. 14) be GRANTED, that Defendant's Motion for Summary Judgment (ECF No. 20) be DENIED and that the final decision of the Commissioner be VACATED and REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Let the Clerk forward a copy of this Report and Recommendation to United States District Judge John A. Gibney, Jr., and all counsel of record.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____/s/_____

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: July 25, 2019

30